UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| RED SONJA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: |
| | ) | 06-CV-00270 (SLR) |
| PARADOX ENTERTAINMENT, INC., | ) | **PUBLIC VERSION** |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Richard K. Herrmann, #405
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
P.O. Box 2306
Wilmington, DE  19899-2306
Telephone: (302) 888 6816
Facsimile: (302) 571 1750
rherrmann@morrisjames.com

Mark A. Berman, Esquire
Thomas J. Curran, Esquire
Ira Brad Matetsky, Esquire
GANFER & SHORE, LLP
360 Lexington Avenue
New York, New York 10017
Telephone: (212) 922-9250
Facsimile (212) 922-9335

Attorneys for Plaintiff
RED SONJA LLC

Original Date:  March 23, 2007
Public Version:  April 3, 2007

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   SUMMARY OF ARGUMENT ........................................................................... 4

III.  STATEMENT OF RELEVANT FACTS ............................................................ 5

      A. Defendant's Deficient Document Production ........................................ 5

      B. Defendant's Improperly Sought To Derail Plaintiff's Counsel's
         Deposition of Dark Horse, Paradox's Licensee, Which
         Produced The Documents That Paradox Supposedly
         Could Nor Or Was Unable To Produce And Which
         Deposition Was Limited To Authentication ........................................ 7

      C. Defendant's Position Concerning Relevancy In This
         Action Is Disingenuous ..................................................................... 9

      D. Red Sonja Is Entitled To Sanctions For Being
         Forced To Bring This Motion His Continued Deposition ............................ 11

IV.   ARGUMENT ..................................................................................................... 12

      A. Plaintiff Seeks The Production of Clearly Relevant And Called For
         Materials And Its Motion to Compel Should Be Granted ............................ 12

      B. Plaintiff Is Entitled To the Deposition of Fredrik Malmberg ............................ 15

      C. Plaintiff Is Entitled to Its Rule 30(b)(6) Depositions .......................................... 16

      D. Sanctions Is Clearly Merited .............................................................................. 19

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| RED SONJA LLC,<br><br>        Plaintiff,<br><br>v.<br><br>PARADOX ENTERTAINMENT, INC.,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No.:<br>06-CV-00270 (SLR)<br>**FILED UNDER SEAL** |

## REPLY MEMORANDUM OF LAW IN FURTHER
## SUPPORT OF PLAINTIFF'S MOTION TO COMPEL

Plaintiff Red Sonja LLC ("Red Sonja" or "Plaintiff"), by its undersigned counsel,
submits this Reply Brief in further support of Plaintiff's Motion to Compel, pursuant to
Rule 37 of the Federal Rules of Civil Procedure.

### I.    INTRODUCTION

Defendant Paradox Entertainment, Inc. ("Paradox" or "Defendant") has the
temerity to claim that Plaintiff is harassing Defendant, that Plaintiff's motion to compel is
moot, and that Plaintiff is seeking to obtain a competitive advantage herein. None of
these contentions have any merit, and Plaintiff's motion to compel should be granted in
its entirety, including the imposition of the requested sanctions.

Paradox produced a grand total of 250 pages of documents during the course of
fact discovery. Paradox supposedly produced everything in August 2006 - but then why
was not a single handwritten document and only a handful of documents concerning
Paradox's communications with Dark Horse Comics, its licensee, turned over to
Plaintiff? When Plaintiff complained in March 2007 about the quality and integrity of

Defendant's document production, Defendant then produced for receipt after the close of fact discovery 187 additional documents, but still nothing handwritten. All of a sudden many communications with its licensee, Dark Horse, were provided; these Dark Horse communications only came to light after Plaintiff received directly from Dark Horse documents pursuant to a subpoena, which included thousands of pages of e-mails, many of which were with Defendant.

Why is Plaintiff not entitled to a Rule 30(b)(6) witness who can testify as to the process of searching for responsive documents, what types of searches took place, Paradox's e-mail review, and why certain documents that once existed were either lost, hidden or destroyed, but in any event not produced? Defendant responds in its memorandum of law -- not with any affidavit -- but by simply stating twice on page one in *italics* that Plaintiff is seeking to take a second 30(b)(6) deposition. Plaintiff, to date, has only deposed two of Defendant's representatives in this action, and both were noticed as Rule 30(b)(1) witnesses.[1]

Plaintiff deposed two of Defendant's representatives for approximately one-half day each: Peter Sederowsky, Defendant's then President, who is now "AWOL" and fired for reasons we believe were associated with this litigation and certain wrongful conduct, and the other was Defendant's now President, Fredrik Malmberg, of whom Plaintiff is entitled to ask questions concerning documents produced by Defendant *after* the close of discovery and after we learn from Paradox's 30(b)(6) witness why documents are missing from Defendant's production.

---

[1]    Copies of the two Rule 30(b)(1) Notices of Depositions pursuant to which Plaintiff took the depositions of Defendant's representatives are annexed hereto as Exhibit "K."

Defendant claims that Plaintiff's motion was "filed prematurely" and that Plaintiff's counsel "did not wait" for Defendant to provide responses to its issues (Def. Mem. at 2). Significantly, to this date, after the filing of the instant motion to compel, no correspondence has been received by the undersigned seeking to resolve each issue raised therein other than a March 1, 2007 letter received by Federal Express on March 2nd stating that Plaintiff's motion is "premature," and then, in the following sentence, reminding us that "discovery closes today."

The fact is that counsel for both sides were discussing Plaintiff's disputes and, in mid-stream, Defendant's counsel left on vacation without having previously advised us that he would be out of the country, and when we contacted his partner to discuss matters, we received no response. Was Plaintiff supposed to wait until after the fact discovery period ended to continue to confer or make its motion, only for Defendant to assert that Plaintiff's application was untimely and, as it did in its March 1st letter, assert that discovery is closed? In either event, Defendant's March 2nd document production received after the close of discovery does not cure any aspect of Plaintiff's motion to compel.

Defendant further accuses Plaintiff of engaging in a pattern of harassment.[2] How can the following be harassment?

- demanding the production of all responsive documents, which supplemental production only occurred because Plaintiff's counsel "called" Defendant on its discovery failures;

---

[2]    If there is any harassment in this case, it has come from Defendant. As is further discussed below in Point III.B., Defendant refused to stipulate to the authenticity of its licensee, Dark Horse Comics' documents, and then caused its counsel and Dark Horse's counsel, neither of which were admitted to the Delaware bar or in this case, to obstruct Plaintiff's document authentication deposition of such non-party.

3

- seeking a Rule 30(b)(6) witness, which Plaintiff is entitled to depose, and against which notice Defendant failed to move to quash, in order to testify as to the integrity of Defendant's document production; and

- seeking a Rule 30(b)(6) witness to attest to the reasons for Mr. Sederowksy's termination surely cannot be improper. If those reasons, concern have any connection to this litigation, as Plaintiff believes,[3] surely Plaintiff is entitled to such information.

Defendant further contends that Plaintiff's motion to compel and this case are being brought by Plaintiff to seek a competitive advantage. Of course, Defendant has designated certain of their documents "attorneys eyes only," so that could not provide Plaintiff with any competitive advantage, and if Defendant truly believes a competitive advantage has been sought, which it has not, Paradox's rights should be protected through the counterclaim it has asserted against Plaintiff for unfair competition.

## II.    SUMMARY OF ARGUMENT

1.    Defendant's claim to now have produced a total of 437 pages, as compared to the approximately 5800 produced by Plaintiff, does not answer the question as to why it has not produced certain documents, why there is not a single handwritten document provided, and why over 1000 Dark Horse communications between Paradox that Plaintiff knows exists were not produced. Plaintiff is entitled to depose a Rule 30(b)(6) witness who is competent to address where Defendant looked for documents, the processes used to locate documents, what documents were provided to counsel for production, and why certain documents were not produced.

2.    Plaintiff is entitled to depose Mr. Malmberg, Paradox's now President, for half a day concerning the subject areas of the documents that Paradox produced after the close of discovery, and given Mr. Sederowsky's recent and abrupt dismissal from

---

[3]    Defendant's opposition papers do not contradict Plaintiff's belief that Mr. Sederowsky was terminated for reasons connected to this litigation. Defendant's silence is deafening.

Plaintiff's *sub judice* motion to compel Conan-related documents, such a document supposedly should bear no relevance to this action.

But of course, Conan-related documents are relevant to this action as counsel for Paradox continually has asked questions concerning Conan in virtually every deposition it has taken. Paradox's counsel's questioning of Mr. Arthur Lieberman set out below at Point III. B. only further demonstrates this point.

**B.    Defendant Improperly Sought To Derail Plaintiff's Counsel's Deposition Of Dark Horse, Paradox's Licensee, Which Produced The Documents That Paradox Supposedly Could Not Or Was Unable To Produce And Which Deposition Was Limited To Authentication**

Plaintiff sought to depose non-party Dark Horse Comics in order to authenticate the documents it produced. None of the documents produced by Dark Horse Comics were bates numbered, and thus in order to ease the deposition questioning, counsel for Plaintiff bates numbered them.[6]

Dark Horse's General Counsel testified at his deposition that Dark Horse

REDACTED          and, therefore, Dark Horse Comics

took the outrageous position that it would    REDACTED to the authenticity of the

documents marked as exhibits by Plaintiff at the deposition, claiming that Dark Horse

would thus be          REDACTED          in fact, the ones

provided by Dark Horse pursuant to subpoena. (Lizzi Dep. at 12)  Counsel for Plaintiff

and Dark's Horse General Counsel had corresponded for weeks in an attempt to negotiate

---

[6]    Copies of the deposition transcripts of Dark Horse's Director of Information Technology, Thomas Kishel, and General Counsel, Kenneth Lizzi, are collectively annexed hereto as Exhibit "N.")

Paradox, the reasons for such termination, which we believe had something to do with this litigation.

3.     Plaintiff is also entitled to a Rule 30(b)(6) deponent to testify to as the reasons for Mr. Sederowsky's termination and, as set forth above, Defendant's flawed document production, for which deposition notices Paradox did not move to quash.

## III.     STATEMENT OF RELEVANT FACTS

### A.     Defendant's Deficient Document Production

Defendant initially produced 250 pages of documents and, in its response to such production, asserted a general objection that the requests do not contain a limitation or scope.   It appears that Defendant may have sought to hide producing documents predicated on such objection.   It should be noted that Defendant's Request for the Production of Documents and its Interrogatory Requests contain no temporal limitation whatsoever.

A review of Defendant's initial production reveals a handful of documents concerning communications with its licensee, Dark Horse Comics, which entity Plaintiff subpoenaed.   Dark Horse, on the other hand, produced to Plaintiff thousands of documents responsive to Plaintiff's subpoena, which Subpoena was far narrower in scope than Plaintiff's Request for the Production of Documents directed against Defendant. (*Compare* Exhibit "C" *with* the Dark Horse subpoena annexed hereto as Exhibit "L.")[4]

---

[4]     The Dark Horse subpoena sought:

    1.   All documents concerning any communication relating to the character Red Sonja.
    2.   All documents concerning any communication relating to the character Red Sonya.
    3.   All documents concerning any communication between Paradox and Dark Horse Comics relating to the character Conan the Barbarian and cross-overs including such character.
    All documents concerning and/or relating to letters to the editor and/or responses thereto as they concern the character Red Sonya and/or the character Red Sonja.

Paradox's productions have contained approximately 45 e-mails sent to or from Dark Horse. Dark Horse's production contains approximately 1,275 e-mails sent to or from Paradox. Plaintiff, on the other hand, produced approximately 5800 pages of documents to Defendant. No wonder why Defendant's memorandum of law is silent as the magnitude of the parties' respective document productions.

Defendant apparently then took the position that because it only acquired the rights to the literary book that contained the "Red Sonya" character in 2006 (Def. Mem. at 3, 4), it was proper for it to withhold materials that concerned "Red Sonja" or "Red Sonya" if dated prior to such date. No doubt Defendant's knowledge of ownership issues relating to the "Red Sonja" property and the "Red Sonya" name and communications concerning either one or both of them or confusion between the two occurring prior to Paradox's acquisition of the literary property that contained the "Red Sonya" character would be relevant in this action. Defendant's objection on its face is without legal merit.

Why is it that Defendant had to be called on its objections to produce responsive documents, and why should Plaintiff be penalized because Paradox failed produce all of its documents prior to Mr. Malmberg's half-day deposition or the close of discovery?

Notwithstanding Paradox's claim to now have produced all documents, Paradox had the temerity to ask Luke Lieberman, one of Plaintiff's representatives, at his deposition last week concerning an unnumbered Conan document, which Paradox's counsel was unable to identify from where it came.[5]

In addition to the fact that a review of Defendant's production reveals that Paradox did not produce such document to Plaintiff, according to Paradox's opposition to

---

[5]    A copy of this exhibit is annexed hereto as Exhibit "M".

6

an amicable way to proceed with this deposition and Dark Horse's General Counsel never indicated that such an objection would be asserted to thwart the deposition.[7]

The deposition answers set out below as well as the conduct and objections interposed by counsel for Paradox, who was not admitted to practice in this case, exhibit outrageous conduct expressly intended to thwart Plaintiff's deposition and constitutes sanctionable conduct.

Dark Horse's Director of Information Technology was deposed and testified as follows:

REDACTED

---

[7]      Copies of the communications between Plaintiff's counsel and Dark Horse Comics' General Counsel are annexed here as Exhibit "O."

Paradox asserts that Plaintiff has engaged in harassment: the harassment in this case has been committed by Paradox with the assistance of its licensee, Dark Horse, who both "tag teamed" to expressly and directly obstruct Plaintiff's depositions. The deponents non-responsive, evasive and obstreperous answers were palpably improper and, coupled with Paradox's counsel's baseless objections, they constitute sanctionable conduct.

C.    **Defendant's Position Concerning**
       **Relevancy In This Action Is Disingenuous**

Paradox, in opposition to the present motion and throughout this litigation, repeatedly has taken the position that the documents Plaintiff seeks are irrelevant, and, in particular, that Conan-related documents have no bearing in this action even through Defendant's unfair competition counterclaim is predicated on Plaintiff somehow taking unfair advantage of the notoriety of Defendant's characters, including Conan. (Counterclaims at ¶¶ 157-58, 171, 174, 176, 182) It is this refusal to produce relevant Conan-related documents that resulted in Plaintiff filing its first motion to compel.[8] Now that Paradox has finally taken the deposition of Plaintiff's principal, we set forth below just some of the questions asked of Mr. Lieberman that puts the lie to Paradox feigned irrelevance assertion:

Q.    What about Conan?

A.    I have no interest in Conan. You're talking beneficial interest?

---

[8]    Presently *sub judice* is Plaintiff's motion to amend its complaint to add the entity that owns the Conan character and to compel the production of Conan-related documents. Immediately after Paradox took the deposition of certain non-parties, Plaintiff moved to supplement the record concerning its motion to compel Conan-related documents based on questions asked at such depositions concerning Conan. No doubt if either of those motions are granted, Plaintiff respectfully submits that Plaintiff would be granted additional time to depose Mr. Malmberg.

9

Q.    Yes.

A.    I have no beneficial interest in **Conan**.

Q.    Do you receive any monetary or other form of compensation from any of these entities today?

A.    Any of which entities? Give me the list.

\* \* \*

Q.    If **Red Sonja** appeared as a character in **Conan**, not as a stand-alone comic, sort of --

A.    Those are the only two choices.

Q.    No, I understand. But my question is, when she appeared as a character in one of the **Conan** comics, not in her own stand-alone, did **Red Sonja** receive remuneration for that?

A.    Yes. But -- and the way they do it is they count pages. But the -- to my knowledge, **Red Sonja** never made it back into the **Conan** stories, although she might have. But as **Red Sonja** -- and then -- and then, sporadically, I can't recall the exact date we terminated Marvel, so I don't know that, but sporadically, and this is sporadic, **Red Sonja** would appear two or three times a year, maybe four times a year, in a **Conan** comic. Again, I think I've given you all of that information in the Answers to Interrogatories. So **Red Sonja** was no longer as active as she was before, but she couldn't be called inactive either.

\* \* \*

Q.    Can you identify any of **Red Sonja's** competitors by name in the fantasy genre?

A.    Zena was a competitor.

Q.    Zena?

A.    Would have been a very specific competitor because Hercules would be a competitor. Conan would be a competitor. Kull would be a competitor. Solomon Kane would be a competitor. Therefore, the choice was made to diminish the look of those characters in favor of **Conan** for a large portion of time, when they were in existence.

Q.    Was that because **Conan** had better sort of recognition?

10

A.    **Conan** had better recognition, but it's like running three Democrats. You're not going to do too well in winning the buck or the election if you're running three Democrats; they'll tend to carve into each other. So from the board of **Conan** the decision was made, along with the heirs, that it certainly did not pay to raise the profile of a Kull, for example, to near **Conan's** or a Bran Mak Morn or Solomon Kane as long as **Conan** was doing as well as they wanted it to at the time. And the reason that was done was because of competition. The same thing was true for **Red Sonja**. Although Red Sonja being a female, she sits in a category that's just a little bit different because that species in fantasy is just a little bit different than the males.

* * *

Q.    And they only report to you with respect to **Conan Properties International, LLC?**

A.    I have no idea what the name of the vehicle is, but they report to me on Conan sales, C-O-N-A-N, sales. And they report to me every quarter, and they've been diligent about doing so.

* * *

Q.    Hyboria is the time period of **Conan** and **Red Sonja**. Well, in all due respect, I'm asking the questions and you're answering today. And I'm asking questions about Thulsa Doom because there are some -- the words "Thulsa Doom" are in your Complaint, and I'm just trying to figure out --

A.    You mean if the words are in my Complaint, you have the right to discover with respect to it, Tim? Is that what you're saying?

Q.    No, I'm not saying that.

A.    I wouldn't say that you would be saying that either.

Q.    But I don't see that it's an inappropriate question either.

A.    I didn't see that the **Conan** questions that were being asked were inappropriate or the Conan discovery requests were inappropriate for the same reasons.

Q.    No one ever precluded any questions or answers about **Conan**.

A    Oh, is that right? Okay. Okay.

Q.    If you were told otherwise, you've been deceived.

11

A.    All the documents were given to us that we requested regarding **Conan**?

Q.    I didn't say that.

A.    It's the same thing. Discovery is discovery.

\* \* \*

Q.    He was an agent for Conan?

A.    Well, he was an agent for Gersh, who represented **Conan**. It's true that Mr. Gotta has acted as an agent for both **Red Sonja** and **Conan** while he was at Gersh?

Q.    It's true that Mr. Gotta has acted as an agent for both **Red Sonja** and **Conan** while he was at Gersh?

A.    And Kull and some of the other properties.  Once you find a good agent, you hold on to him.

(The relevant excerpt of the deposition transcript of Arthur Lieberman, dated February 7,

2007, at 45, 192-93, 265-66, 295-96, 338-39 and 369-70 are annexed hereto as Exhibit

"P") (emphasis added.)

## IV.    ARGUMENT

### A.    Plaintiff Seeks The Production Of Clearly Relevant And Called For Materials And Its Motion to Compel Should Be Granted

Defendant's sole defense to Plaintiff's motion to compel is that the documents

sought by Plaintiff concern a period prior to February 2006 when it purchased the literary

work that contained the "Red Sonya" character, claiming that such materials are therefore

irrelevant.

It is axiomatic that documents pre-dating February 2006 are relevant to this

action.  Merely as an example, Defendant's knowledge of Plaintiff's ownership of the

"Red Sonya" character prior to such date is no doubt relevant.  Likewise, clearly relevant,

12

is also what Paradox knew of the "Red Sonya" name prior to its purchase of the Robert E. Howard library, which contained that character, among hundreds of other fantasy characters, as well as whether there were issues concerning confusion or other concerns relating to the two characters prior to February 2006.

Indeed, the first e-mail quoted below reveals communications indicating that Paradox                                    **REDACTED**                                    which communications took place _six months_ before Paradox purchased the Robert E. Howard library and it, by happenstance, also further demonstrates the relevance of Paradox's Conan character to Plaintiff's Red Sonja character.

By way of further example, in addition to the four e-mails quoted on pages 5 and 6 of Plaintiff's moving memorandum, below are five pre-February 2006 e-mails (in reverse chronological order; one e-mail is repeated from Plaintiff's moving papers due to its significance) that happen to come from the first 27 pages (out of over 2000 pages of documents) produced by Paradox's licensee that are devastating in establishing, if nothing else, the relevance of the requested documents:

- August 20, 2005 e-mail from _Fred Malmberg_ to Dark Horse Comics:

REDACTED

- August 4, 2005 e-mail from a presumptive fan to Dark Horse Comics:

REDACTED

13

- May 6, 2005, 2005 e-mail from Dark Horse Comics to others:

REDACTED

- April 28, 2005 e-mail from Dark Horse Comics to *Fred Malmberg*:

REDACTED

- January 6, 2005 e-mail to *Fred Malmberg* from a Matt Forbeck, which is the *first* document found in Dark Horse's production:

REDACTED

(Highlighted copies of these e-mails are annexed hereto as Exhibit "Q") (emphasis added). Each of the above e-mails clearly establishes the relevance of the pre-February 2006 time period. How can Paradox in good faith claim that such time period is not relevant? There are hundreds and hundreds of e-mails produced by Dark Horse during the pre- and post-February 2006 period that are relevant, and which were not produced in the approximately 437 pages produced by Paradox, which now still only contains 39 e-mail trails.

After weakly arguing lack of relevance, Paradox then claims to have produced all of its "Red Sonja" and "Red Sonya" documents. Plaintiff does not have to rely upon counsel's unsworn statement to that effect, but is entitled to depose an appropriate Rule 30(b)(6) witness who can explain why, among other documents, clearly relevant "Red

14

Sonja" and "Red Sonya" e-mails were not produced.

**B.    Plaintiff Is Entitled To The Deposition Of Fredrik Malmberg**

Plaintiff is entitled to a one-half day deposition[9] of Mr. Malmberg where, *after* the close of discovery, Paradox produced additional documents increasing its production by approximately 75% percent, and a deposition of Mr. Malmberg concerning the subject areas of those documents is entirely proper.  How can Paradox claim that Plaintiff then "had a full and fair opportunity to depose Mr. Malmberg" given its utterly belated production. (Def. Mem at 7)

Indeed, it is suspect whether today Paradox has produced all relevant and called for documents.[10]  Point V.B. of Paradox's Memorandum of Law not unsurprisingly

---

[9]    As a courtesy to Mr. Malmberg, we had originally deposed him in Philadelphia where his counsel is located.

[10]    When Mr. Malmberg was first deposed, unbelievably he effectively was unable to testify to the substance of Paradox's Counterclaims.  Mr. Malmberg was asked questions with respect to Paradox's counterclaims, but at the time of his deposition he could not recall any of the substance thereof, i.e.:

    Q:    . . . .The Complaint alleges unfair competition against Paradox Entertainment, correct?

REDACTED

    Q:    To your understanding.

REDACTED

(A copy of the relevant excerpt of the deposition transcript of Fredrik Malmberg, taken on August 24, 2006 ("Malmberg Tr."), p. 219-20 is annexed hereto as Exhibit "R") (emphasis added.)

    Now with Paradox's former President dismissed from the company, and where Mr. Sederowsky and Mr. Malmberg were the only individuals identified at Paradox "likely to have discoverable information which it may use to support its defense or counterclaim." Plaintiff should be entitled to also question Mr. Malmberg, Paradox's current President, concerning such counterclaims, and he should be educated as to them if he truly does not know the basis for them in advance of his deposition as he, as admitted by Paradox, is the only remaining Paradox representative that could even testify to them.

disingenuously fails to even acknowledge such discovery failures, when it asserts that Plaintiff should not be given the right to question Mr. Malmberg based on the documents Dark Horse produced, which Plaintiff would submit, as set forth below, alone would provide this Court with a basis to require a continued deposition of Mr. Malmberg.

Further, with respect to the documents produced by non-party Dark Horse, Paradox has yet to explain how there can be more than one thousand e-mails that Paradox's licensee produced that were sent to or received from Paradox, which Paradox failed to produce, and for which Plaintiff should be entitled to question Mr. Malmberg.

Indeed, Plaintiff's subpoena to Dark Horse was narrower than Plaintiff's Document Request to Paradox, and all things being equal, one would have expected Paradox's document production to have dwarfed that of Dark Horse's. Moreover given the way counsel for Dark Horse and Paradox conspired with each other to frustrate Plaintiff's deposition of Dark Horse, Paradox no doubt was in communication with its licensee concerning its production, and should not be heard now to complain that Dark Horse's production included irrelevant materials. In the end, Mr. Malmberg's deposition should be granted, but it should wait until Paradox produces its Rule 30(b)(6) witness, who will presumptively explain the reasons why clearly relevant e-mails, as those described above, are missing and were not produced.

### C.     Plaintiff Is Entitled To Its Rule 30(b)(6) Depositions

#### 1.     Plaintiff Is Entitled To Know
The Reasons For Mr. Sederowsky's Termination

Plaintiff is entitled to know the reasons why Mr. Sederowsky was terminated. Mr. Sederowsky was the former President of Paradox, and the person with whom the principal of Plaintiff repeatedly communicated in the past. Plaintiff is entitled to know if

16

the reasons for his termination have anything to do with this litigation, which Plaintiff believes to be the case, and which Defendant has never refuted, in addition to and wrongful acts that Plaintiff has learned were the reasons for his dismissal.

Mr. Sederowsky is currently "AWOL" and Plaintiff has been informed by counsel for Paradox that Paradox no longer has any control over him. Yet, Paradox has refused to stipulate that, if Mr. Sederowsky suddenly appears at trial to testify on Paradox's behalf, Plaintiff would be entitled to a deposition of him. Mr. Sederowsky has provided sworn testimony in this action, and Plaintiff is entitled to test those statements by knowing why he was dismissed and what his "true" status was with Paradox at the time he was deposed, as he was "canned" shortly thereafter.

As for Plaintiff learning about Mr. Sederowsky's termination, Plaintiff had learned of it outside of Paradox's deposition of non-party Nu Image. But more significantly, it appears that, based on the statements contained in Paradox's Memorandum of Law, Paradox would not have informed Plaintiff of such termination. That only raises further the issue of what Paradox is hiding.

With respect to Plaintiff's questioning of non-party Nu-Image, contrary to Paradox's assertion, such questioning was entirely proper and Plaintiff's counsel's questioning need not be limited to the scope of Defendant's questioning of a non-party. Indeed, because Nu Image's deposition testimony is hearsay, as Paradox readily admits, that just provides further reason why Plaintiff is entitled to know directly from Paradox the truth behind Mr. Sederowsky's termination.

Plaintiff was willing to accept Defendant's compromise that it be provided with interrogatory responses regarding the reasons for Mr. Sederowsky's termination, but on

17

certain very reasonable conditions: first, Plaintiff would have the right to depose a Paradox 30(b)(6) witness during the expert discovery period concerning Mr. Sederowsky's termination if Plaintiff was not satisfied with Paradox's interrogatory responses,[11] and, second, Paradox providing Plaintiff with a live 30(b)(6) witness, who is Paradox's custodian of records and who could testify as to Paradox's record retention policy and the documents produced in this action. Counsel for Paradox never agreed to the above and then went on vacation. Plaintiff continues to stand by its offer.

### 2.    Plaintiff Is Entitled To Depose A Witness Concerning Defendant's Flawed Document Production

As demonstrated herein and in Plaintiff's moving memorandum of law, Paradox has engaged in shenanigans throughout discovery, as evidenced most recently by Paradox's sanctionable obstruction of Plaintiff's Dark Force deposition and the 187 documents produced to Plaintiff for receipt beyond the discovery period.

The record is clear that scores of documents authored by and sent to Mr. Malmberg were not produced concerning both during the pre- and post-February 2006 time period. Plaintiff is entitled to know why such e-mails were not produced, why not a single handwritten document was produced, and why the letter to the editor referenced in paragraph 49 of the Complaint was not provided, which Plaintiff has asserted was a "sham" created by Paradox in order to confuse the public.

Simply stated, Paradox's defense that "no one from Paradox besides Mr. Malmberg remains to testify regarding Paradox's document production" is just too

---

[11]     Given that the end of the fact discovery period was rapidly approaching and the deficient and improper responses that Paradox had already interposed in response to Plaintiff's Request for Interrogatories, Plaintiff wanted to protect its rights if it was again provided "snow in the winter" when it received responses from Paradox.

convenient and serves as no legal excuse, and, in fact, only provides further reason why Mr. Malmberg's continued deposition should be ordered.  Counsel for Paradox is obligated to educate someone, if necessary, to testify, as to Defendant's document production and its record retention policy.

**D.    Sanctions Is Clearly Merited**

Plaintiff is clearly entitled to sanctions for Defendant's discovery abuses, including, its producing documents for receipt after the discovery period ended, its disingenuous relevance objections, its obstreperous conduct in frustrating Plaintiff's Dark Horse deposition through an attorney not permitted to practice before this Court, and its refusal, without moving for a protective order, to produce its Rule 30(b)(6) witnesses.

Dated: March 23, 2007

Richard K Herrmann, #405
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
P.O. Box 2306
Wilmington, DE  19899-2306
Telephone: (302) 888 6816
Facsimile: (302) 571 1750
rherrmann@morrisjames.com

Mark A. Berman, Esquire
GANFER & SHORE, LLP
360 Lexington Avenue
New York, New York 10017
Telephone: (212) 922-9250
Facsimile (212) 922-9335

19

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of April 2007, I electronically filed the foregoing

document, **REDACTED VERSION OF REPLY MEMORANDUM OF LAW IN**

**FURTHER SUPPORT OF PLAINTIFF'S MOTION TO COMPEL,** with the Clerk of the

Court using CM/ECF which will send notification of such filing to the following:

Thomas P. Preston, Esq.
Blank Rome LLP
1201 Market Street, 8th Floor
Wilmington, DE 19801
preston-t@blankrome.com


Additionally, I hereby certify that on the 3rd day of April 2007, the foregoing document

was served as indicated on the following:

**VIA EMAIL**                                  **VIA EMAIL**
Thomas P. Preston, Esq.                        Earl M. Forte, Esq.
Blank Rome LLP                                 Timothy D. Pecsenye, Esq.
1201 Market Street, 8th Floor                  Blank Rome LLP
Wilmington, DE 19801                           One Logan Square
preston-t@blankrome.com                        Philadelphia, PA 19103
                                               215.569.5500
                                               forte@blankrome.com
                                               pecsenye@blankrome.com


    /s/ Richard K. Herrmann
Richard K. Herrmann (#405)
MORRIS JAMES LLP
500 Delaware Avenue, 15th Floor
Wilmington, DE 19801
(302) 888-6800
rherrmann@morrisjames.com

Attorneys for Plaintiff RED SONJA LLC