IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RED SONJA LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C. A. No. 06-270 (SLR) |
| | ) | |
| PARADOX ENTERTAINMENT, INC., | ) | |
| | ) | PUBLIC VERSION |
| Defendant. | ) | |
| | ) | |

**DEFENDANT PARADOX ENTERTAINMENT INC.'S ANSWERING BRIEF
IN OPPOSITION OF PLAINTIFF'S "MOTION IN LIMINE" SEEKING TO
PRECLUDE PARADOX FROM INTRODUCING CERTAIN AT TRIAL AND
TO DEEM AUTHENTICATED CERTAIN OTHER DOCUMENTS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Richard J. Bauer (#4828)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
*Attorneys for Defendant
  Paradox Entertainment, Inc.*

OF COUNSEL:

Frederick U. Fierst
Fierst, Pucci & Kane LLP
64 Gothic Street
Northampton, MA 01060
(413) 584-8067

ORIGINAL VERSION FILED JUNE 1, 2007
REDACTED VERSION FILED JUNE 7, 2007

i.

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................. 1

STATEMENT OF FACTS ................................................................................................. 3

      A.    The Parties. ................................................................................................... 3

      B.    Plaintiff's Claims. ......................................................................................... 5

      C.    Paradox's Counterclaims ............................................................................. 6

      D.    Discovery ...................................................................................................... 7

ARGUMENT .................................................................................................................... 9

      I.     THERE IS NO BASIS TO PRECLUDE ANY MENTION OF CONAN. .................................................................................................... 9

      II.    THERE IS NO BASIS TO PRECLUDE PARADOX FROM INTRODUCING EVIDENCE RELATING TO ITS DAMAGES ON COUNTERCLAIMS. ...................................................... 10

      III.   THERE IS NO BASIS TO ALLOW PLAINTIFF TO RELY ON UNAUTHENTICATED THIRD PARTY DOCUMENTS AT TRIAL WHILE PRECLUDING PARADOX FROM USING THOSE SAME DOCUMENTS ................................................................................................ 12

      IV.   THERE IS NO BASIS TO SANCTION PARADOX AND PRECLUDE IT FROM RELYING ON INFORMATION SUPPORTING ITS COUNTER-CLAIMS THAT HAS BEEN PROPERLY PRODUCED IN THIS CASE. .................................. 13

      V.    THERE IS NO BASIS TO LIMIT THE TESTIMONY OF PLAINTIFF'S WITNESSES AT TRIAL. .................................................... 15

CONCLUSION ................................................................................................................ 16

ii.

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ali v. Sims,*
    788 F.2d 954 (3d Cir. 1986)................................................................... 14

*ArthroCare Corp. v. Smith & Nephew, Inc.,*
    C.A. No. 01-504-SLR (D. Del. Oct. 15, 2002) ...................................... 11

*Cairns v. Franklin Mint Co.,*
    292 F.3d 1139 (9th Cir. 2002) ............................................................... 11

*Feinman v. Bank of Delaware,*
    728 F.Supp. 1105 (D. Del. 1990)........................................................... 10

*In re Paoli R.R. Yard PCB Litig.,*
    35 F.3d 717 (3d Cir. 1994)..................................................................... 14

*Kinney v. Trs. of Princeton Univ.,*
    No. 04-5252 (MLC), 2007 U.S. Dist. LEXIS 14452 (D.N.J.
    Feb. 28, 2007) ........................................................................................ 14

*Landgraf v. USI Film Prods.,*
    511 U.S. 244 (1994)............................................................................... 11

*Meyers v. Pennypack Woods Home Ownership Ass'n,*
    559 F.2d 894 (3d Cir. 1977)................................................................... 14

*New Sensor Corp. v. CE Distrib. LLC,*
    367 F. Supp. 2d 283 (E.D.N.Y. 2005) .................................................. 12

*Newman v. GHS Osteopathic, Inc.,*
    60 F.3d 153 (3d Cir. 1995)..................................................................... 14

*Seagate Tech. LLC v. Cornice, Inc.,*
    C.A. No. 04-418-SLR (D. Del. June 28, 2005) .................................... 11

*United States v. Dentsply Int'l, Inc.,*
    No. 99-5, 2000 WL 654378 (D. Del. May 10, 2000) ........................... 14

*White v. N.H. Dept. of Employment Sec.,*
    455 U.S. 445 (1982)............................................................................... 11

*Yankee Candle Co. v. Bridgewater Candle Co.,*
    140 F.Supp.2d 111 (D. Mass. 2001) ..................................................... 12

iii.

<u>Statutes</u>

15 U.S.C. § 1117(a) ........................................................................................... 11

Fed. R. Civ. Pro. 37............................................................................................ 14

1.

## INTRODUCTION

Notwithstanding plaintiff's assertions of "obstructionist" and "insidious" conduct, there is little substance to support the rhetoric. Paradox has never made any commercial use of the Red Sonya character. It has not sold or offered for sale any products, comic books, magazines, novels or other publications based on Red Sonya. Nor has it ever licensed the Red Sonya character for any purpose. Plaintiff has offered no surveys evidencing confusion in a relevant market. And notwithstanding its call for millions of dollars in its Complaint, plaintiff has suffered no actual damages.[1]

Nevertheless, plaintiff brought this case and pursued Paradox with vigor. Eschewing discovery on baseless allegations in its complaint involving allegedly "fabricated" letters to the editor and "interference" that plaintiff's president conceded never occurred, plaintiff attempted fishing expeditions into irrelevant issues, including the finances of the successful Conan franchise that competes with Red Sonja and the integrity of Paradox employees and former employees. When Paradox declined to participate in the fishing, plaintiff moved to compel (twice). Now, having scant evidence to support its claims and having been unsuccessful in its attempts to uncover irrelevant information of commercial or competitive (or salacious) interest, plaintiff is attempting to turn its proclaimed "entitlement" to irrelevant information into a preclusion motion – to remove the risks it faces from Paradox's counterclaims for having brought an

---

[1]    As demonstrated in Paradox's Brief in Support of its Motion to Strike the Report of Fred B. Tarter, the opinions in Mr. Tarter's report are speculative, conclusory and unsupported. (D.I. 88). Although plaintiff said that its expert would ██████████████████████ Mr. Tarter never conducted any independent investigation or survey to determine whether there was any confusion, its impact, duration, or costs. (D.I. 88 at 10-13).

2.

unsupported case and to prevent Paradox from offering at trial evidence of the weakness of plaintiff's case.

Defendant has asserted counterclaims for unfair competition and abuse of process. In its motion, plaintiff seeks to characterize those counterclaims as being based on plaintiff's competition with Conan. Plaintiff then argues that preclusion is appropriate in light of Paradox's failure to provide certain information – including financial information – relating to the Conan franchise. Free from plaintiff's incorrect characterization of the counterclaims, sanctions precluding Paradox from asserting its counterclaims are improper. Far from being all about Conan, Conan is mentioned just four times in the more than fifty paragraphs supporting Paradox's counterclaims. The claims instead are based on plaintiff having brought a meritless lawsuit for an improper purpose. The grounds for these claims are well-known to plaintiff. And the relief sought is simply an injunction and recovery of the fees Paradox has had to expend, and is still expending, in connection with its defense.

The remainder of plaintiff's motion consists of unsupported and unsubstantiated requests to keep out evidence unfavorable to plaintiff's case. For example, plaintiff requests that the Court allow it to utilize the admittedly unauthenticated third party documents that plaintiff likes while precluding defendant from using the documents of that third party that plaintiff dislikes. The basis offered for that is plaintiff's conclusory statement – wholly unsupported by any facts – that Paradox engaged in unspecified "obstructionist" conduct in connection with the deposition of the third party.

3.

Plaintiff's repeated claims of "entitlement" to information that is the subject of pending motions to compel is hardly the basis to sanction Paradox for failure to produce the disputed information.    So too, plaintiff's unsupported allegations of wrongdoing leading to sanctions are insufficient.  Plaintiff's motion in limine should be denied.

## STATEMENT OF FACTS

### A.    The Parties.

Defendant Paradox manages character-based properties owned either by Paradox or its wholly-owned subsidiaries.  Those properties include more than 1,000 fantasy, horror, science fiction, and western stories and characters, including Conan (aka "Conan the Barbarian").   Originally created in 1932 by renowned fantasy author Robert E. Howard, Conan has appeared in numerous books, comics, television programs, and video games, as well as two successful movies.  (Ex. 1 at 267-68).  In February 2006, Paradox purchased additional stories and characters in the Robert E. Howard Library ("REH Library"), including Red Sonya, who first appeared in the 1934 short story "Shadow of the Vulture." (Ex. 2 at 100-01).

Neither Paradox nor or any of its related entities has ever sold or offered for sale any products, comic books, magazines, novels or other publications based on the Red Sonya character.  (*Id.* at 187; Ex. 3 (L. Lieberman Dep.) at 122-23).  Nor has Paradox ever licensed or offered a license to use the Red Sonya character for any purpose. (Ex. 2 at 172).

Plaintiff Red Sonja LLC has certain rights in one property – the fantasy genre character RED SONJA, a "warrior woman out of majestic Hyrkania." (D.I. 1). Created by comic book writer Roy Thomas in the early 1970's as a supporting character

4.

in the "Conan the Barbarian" comic book series, RED SONJA was loosely based on the Red Sonya character from Robert E. Howard's story "Shadow of the Vulture." (D.I. 88 at Ex. 5). Roy Thomas, however, reinvented his RED SONJA because it was "best to make [RED SONJA] a bit more of a '*new*' character" so that "***Red Sonya-with-a-'y' would continue to exist, pristine and untouched*** . . . while Sonja-with-a 'j' was a blank slate, on which [Roy Thomas] could write and Barry [Smith] could draw whatever we would."[2] (*Id.*).

RED SONJA was first featured in her own comic book series in 1977, entitled RED SONJA, and was made into an unsuccessful movie in 1985, although that movie has yet to ███████████████ resulting in ███████ royalties. (Ex. 1 (A. Lieberman Dep.) at 207-09). Throughout the 1990's, RED SONJA appeared as a feature comic in only three publications, the last of which was in 1999. (D.I. 88 at Ex. 6).

The parties in this case are well-known to each other and have been involved in various business dealings and licensing efforts over the years. (*See* D.I. 34 at Ex. A ¶¶ 3-12). The president of plaintiff, Arthur Lieberman, has been intimately involved with many of the Robert E. Howard characters, acting as legal and marketing representative since the 1970's. (Ex. 1 at 28-29; 41-43). He also holds a small ███████ ██████████████████████ (*Id.* at 45-46). Over the years, Mr. Lieberman has unsuccessfully approached Paradox ████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████ ███Though the parties have had significant interactions, some of those interactions –

---

2        Emphasis added unless otherwise noted.

5.

particularly those between Mr. Lieberman, and Paradox's former president, Peter Sederowsky – have been less than amicable. (*E.g.*, Ex. 6 (J. Gatta Dep.) at 60; Ex. 7 (DEF0023-24)).

### B.    Plaintiff's Claims.

Plaintiff sued Paradox on April 25, 2006, asserting this to be "one of the more insidious cases of unfair competition and trademark infringement ever knowingly advanced" (D.I. 1 at 1). The purportedly "insidious" conduct consisted of Paradox's issuance of two press releases – announcing Paradox's acquisition of the REH Library of characters (Ex. 8) and the development of a movie based on a Robert E. Howard western (Ex. 9) – Paradox's posting of an errant article written by a third party about its acquisition of the REH Library, and a two sentence statement on Paradox's website noting that Paradox "builds brands" and referring to Red Sonya and other characters as "successful brands." (*See* D.I. 88 at 3-9).

Plaintiff also alleged that Paradox: "[f]abricated, along with its Conan licensee Dark Horse Comics, a letter to the editor in which they advised the public that they would be bringing Conan's love interest Red Sonya (with a 'y') back" and "[a]ttempted to interfere with plaintiff's contracts and potential contracts with third parties by using Conan contracts . . . as leverage." (D.I. 1 at 4). Notably, however, there is not a shred of evidence to support these allegations, and plaintiff has not asserted any damages in connection with these claims. Indeed, the supposedly "fabricated" letter was not even raised in the depositions of witnesses from Dark Horse Comics. And Arthur Lieberman's own testimony relating to the purported "interference" with contracts makes clear that the allegations are baseless:

6.



After Paradox's initial press release announcing its acquisition of the REH Library (on February 6, 2006), Arthur Lieberman was in contact with Paradox for various issues and disputes involving other characters managed by Paradox. (Ex. 10 (RS05482-83); *see also* Ex. 4). At *no time*, however, did Mr. Lieberman (or anyone else at plaintiff) ever alert Paradox to any possible "confusion" or any other concern involving references to the Red Sonya character acquired as part of the REH Library. (Ex. 1 at 347-348; Ex 3 at 117). Nor did plaintiff take any corrective action of its own to mitigate any purported confusion or damage. (Ex. 1 at 351).

**C.    Paradox's Counterclaims.**

The first time Paradox was notified of any issue involving the Red Sonya character was upon receiving the complaint in this action on April 27, 2006. Given that Paradox had never received any prior notice from plaintiff, had never commercially used the Red Sonya character and that many of the allegations (*e.g.*, planting of a "fabricated"

7.

letter to the editor, "interference" with plaintiff's contracts) were clearly made up, the lawsuit appeared to be meritless. Nevertheless, Paradox immediately issued a statement clarifying that "Red Sonja® (with a 'j') is owned by Red Sonja LLC" and that Paradox had no intent of commercially exploiting its Robert E. Howard Red Sonya character. (D.I. 88 at Ex. 14). Plaintiff has admitted that these statements ███████████████ ████████████████ but has still pressed on with its lawsuit (Ex. 1 at 356).

On May 30, 2006, Paradox filed its answer and three counterclaims, alleging fraud on the U.S. Patent and Trademark Office, unfair competition and abuse of process. (D.I. 7). Contrary to plaintiff's assertions in its motion papers, Paradox's unfair competition and abuse of process counterclaims are *not* based on Conan. (D.I. 86 at 7-9). Those counterclaims are based on plaintiff filing of a meritless lawsuit, not for any legitimate purpose, but to "generate as much hype, publicity, and discussion . . . regarding the projects *and film* featuring" plaintiff's Red Sonja character[3] or to harass Paradox into purchasing rights to RED SONJA. (D.I. 7 ¶¶ 156-211). As relief, Paradox requests an injunction, "enjoin[ing] Red Sonja LLC from engaging in illegal and uncompetitive actions" as well as damages, including "payment of all attorneys' fees and costs" incurred in defending itself against the frivolous charges. (*Id.*).

### D.     Discovery.

Plaintiff's discovery in this case has rarely focused on the claims that it previously branded as constituting "one of the more insidious cases" of unfair competition and trademark infringement. Plaintiff has *not*, for example, produced

---

[3]     The Complaint was filed days before the movie deal involving RED SONJA was announced. (D.I. 88 at Ex. 15).

8.

surveys demonstrating confusion in any market place. It has *not* identified – much less made any attempt to identify – a single licensee who failed to take a license due to any action by Paradox. It has *not* identified any contracts that were interfered with. It did *not* ask Dark Horse Comics – the licensee, and comic book publisher, of the Conan character – a single question about the purportedly "fabricated" letter to the editor referring to Red Sonya. And it produced no evidence of any actual damages it suffered. (*See* D.I. 88 at 10-13).

   Instead, plaintiff has focused its efforts on dredging up extraneous information about the Conan franchise, Paradox and its former employees, and document retention policies from before Paradox even owned Conan or the other REH Library characters. (*See* D.I. 45; 68; 77). In connection with Conan, Paradox has produced licensing agreements, merchandising agreements, and numerous emails between Dark Horse Comics and its licensor Conan Properties International Inc., a subsidiary of Paradox. But plaintiff still seeks information relating to the "value" of the Conan mark. (D.I. 86 at 7-10; *see also* D.I. 31, 45). Paradox has objected to plaintiff's requests for that information and has opposed plaintiff's motion to compel its production. (D.I. 49).

   Additional Conan documents were produced by Dark Horse Comics in response to plaintiff's subpoena, which sought "*all* documents" relating to the fame and "value" of the Conan trademark, and "*any* communication" between Paradox and Dark Horse. (D.I. 42). Dark Horse cooperated without objection, producing thousands of emails, many of which were irrelevant to any issue in this case. Dark Horse was represented by its own counsel in connection with plaintiff's subpoena and engaged in

9.

discussions with plaintiff about the information sought that Paradox had no involvement in. (Exs. 11 and 12).

In connection with its efforts to dig up information concerning Paradox employees, plaintiff has questioned third party witnesses about their prior dealings with Paradox witnesses, and has demanded a deposition as to the reasons for Peter Sederowsky leaving Paradox. (*See* D.I. 68; 75). Paradox has objected to plaintiff's requests for that information and has opposed plaintiff's motion to compel its production. (D.I. 74).

Having scant evidence to support its claims, and having been unsuccessful in its attempts to dig up irrelevant information of competitive (or salacious) interest, plaintiff has left trying to turn its proclaimed "entitlement" to irrelevant information into a motion for preclusive sanctions. (D.I. 86). That motion, however, is nothing more than an attempt to keep out evidence that is unfavorable to its case.

## ARGUMENT

### I.   THERE IS NO BASIS TO PRECLUDE ANY MENTION OF CONAN.

With respect to "Point I," plaintiff seeks to preclude any mention of Conan, which it claims "serves as a predicate for" Paradox's unfair competition and abuse of process counterclaims. That, however, is incorrect. Paradox's counterclaims are based on plaintiff's baseless lawsuit, which was filed to generate hype, publicity, and discussion regarding the Red Sonja movie announced a week after plaintiff filed its

10.

Complaint[4] and to harass Paradox.  Conan is mentioned just *four* times in Paradox's fifty

five allegations for unfair competition and abuse of process.[5]

       In any event, there is no basis to preclude Paradox's mention of "anything

Conan-related" at trial.  The relevance of Conan to this case is to provide background and

context for plaintiffs' Red Sonja, who was introduced by comic book writer Roy Thomas

as a supporting character in the "Conan the Barbarian" comic book series in the early

1970's.  That "background" has been raised in the pleadings and during discovery.

Moreover, plaintiff can hardly claim surprise at this given that its president, Arthur

Lieberman, represented Conan from the 1970's, negotiated the sale of Conan to Paradox

in 2004, and still receives ███████████████████████.

## II.  THERE IS NO BASIS TO PRECLUDE PARADOX FROM INTRODUCING EVIDENCE RELATING TO ITS DAMAGES ON COUNTERCLAIMS.

       Plaintiff's request in "Point II" — to preclude Paradox from introducing

any evidence of damages on its Counterclaims because it never "served any affirmative

expert report" or "put up a witness that was capable of testifying as to the substance of

the Counterclaims alleged, let alone the alleged damages" (D.I. 86 at 13) — should be

denied.

       As an initial matter, plaintiff served no interrogatories on damages in this

case.  Thus, much of plaintiff's argument is devoted to complaints that Paradox's fact

---

[4]     The elements of abuse of process are that the plaintiff had an (1) "ulterior purpose" and  (2) the use of the process that is "not proper in the regular conduct of the proceedings." *Feinman v. Bank of Delaware*, 728 F.Supp. 1105, 1115 (D. Del. 1990).

[5]     Notably, plaintiff never requested documents concerning the other characters — Thulsa Doom and Kulan Gath — which are collectively cited *five* times in those counterclaims.

11.

witnesses could not provide contention discovery during their depositions. This Court, however, does not require a lay person to formulate a party's contention in response to deposition questions. *Seagate Tech. LLC v. Cornice, Inc.*, C.A. No. 04-418-SLR, at 38 (D. Del. June 28, 2005) ("No contention depositions. Those are in writing. There's no one person that should have to answer that.") (Ex. 13); *ArthroCare Corp. v. Smith & Nephew, Inc.*, C.A. No. 01-504-SLR, at 13-14 (D. Del. Oct. 15, 2002) ("I would not put any credence in contention depositions to have one person be designated as the corporate spokesperson for legal issues . . . and even incorporating all the facts. That's what interrogatories are for . . . I would say don't bother taking them [contention depositions]. I think they're ridiculous . . . .") (Ex. 14).

Moreover, as discussed above, the relief that Paradox seeks in connection with its counterclaims is an injunction enjoining "Red Sonja LLC from engaging in illegal and uncompetitive actions" and "payment of all attorneys' fees and costs" incurred in defending itself against Red Sonja's baseless charges, the calculation of which does not require expert opinion.[6] And given that the litigation is still ongoing, the amount of fees has not yet been determined.[7]

---

[6]    The calculation of attorneys' fees occurs after the decision to award fees has been made because that is "uniquely separable from the cause of action to be proved at trial." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 277 (1994) (citations omitted); *White v. N.H. Dept. of Employment Sec.*, 455 U.S. 445, 451-52 (1982) ("Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separate from the decision on the merits").

[7]    In addition to its counterclaims, Paradox will also seek attorneys' fees under the Lanham Act, which authorizes an award of attorneys' fees to the "prevailing party" in "exceptional" cases. 15 U.S.C. § 1117(a). Courts have often awarded fees to defendants in Lanham Act cases where, as here, a plaintiff's case is groundless, unreasonable, or pursued in bad faith. *See, e.g., Cairns v. Franklin Mint Co.,* 292 F.3d 1139, 1156 (9th Cir. 2002) (affirming fee award when
(continued . . .)

12.

**III.  THERE IS NO BASIS TO ALLOW PLAINTIFF TO RELY ON UNAUTHENTICATED THIRD PARTY DOCUMENTS AT TRIAL WHILE PRECLUDING PARADOX FROM USING THOSE SAME DOCUMENTS.**

Plaintiff requests in "Point III" that this Court to preclude Paradox from "introducing [third party] Dark Horse's documents or its testimony at trial," but to "deem[] documents produced by Dark Horse that Plaintiff seeks to use at trial as authentic business records." (D.I. 86 at 15-18).  That, too, should be denied.

First, Dark Horse is a third party licensee of Paradox.  As set forth in plaintiff's motion, Dark Horse was represented by its own counsel at the depositions and plaintiff engaged in at least 20 email exchanges over several weeks with Dark Horse's counsel concerning the documents produced.  Yet, during its "extensive correspondence," Plaintiff never once cc'd Paradox on any of those emails or forwarded them to Paradox. There is simply no basis for plaintiff's conclusory and unsupported accusations that Paradox was "clearly conjoined" with a third-party in "intentionally obstructing Plaintiff's deposition."

Moreover, though plaintiff now complains about the Dark Horse deposition and suggests it was unable to obtain vital information, plaintiff never filed a

---

(. . . continued)

trademark claim was "groundless and unreasonable because it had no legal basis, having been based on the 'absurd' and 'just short of frivolous' contentions"); *New Sensor Corp. v. CE Distrib. LLC*, 367 F. Supp. 2d 283, 286-287 (E.D.N.Y. 2005) (awarding fees under the Lanham Act for, among others, failing to proffer "evidence that it conducted, or planned to conduct, a survey to establish consumer confusion"); *Yankee Candle Co. v. Bridgewater Candle Co.*, 140 F.Supp.2d 111, 121-22 (D. Mass. 2001) (awarding fees considering plaintiff's "aggressive pursuit of unfounded claims").

13.

motion seeking compliance with its subpoena or a motion to compel.[8]  Finally, plaintiff

itself has conceded that the Dark Horse documents are neither "authentic" nor "meet the

other requirements for admissibility." (D.I. 86 at 15).  Without meeting the requirements

of Federal Rules of Evidence, there is no basis to deem certain "unidentified" documents

authenticated.

### IV. THERE IS NO BASIS TO SANCTION PARADOX AND PRECLUDE IT FROM RELYING ON INFORMATION SUPPORTING ITS COUNTER-CLAIMS THAT HAS BEEN PROPERLY PRODUCED IN THIS CASE.

In "Point IV," plaintiff urges that Paradox be precluded from putting on

evidence that was properly produced in discovery as a "sanction" for something that is

not wholly clear from plaintiff's motion.  (*Id.* at 18-19).  Plaintiff refers to Paradox's

failure to produce documents that are the subject of pending motions to compel and

Paradox's production of documents "prompted by demands made by Plaintiff and not

through any voluntary compliance by Defendant."  (*Id.* at 19).  Plaintiff offers no

explanation, however, why such actions justify sanctions related to documents and

information that have been produced, and witnesses who have been identified.

In any event, sanctions under Federal Rule of Civil Procedure 37(c)(1) for

a party failing to disclose information as required by Rule 26(e) can happen *only* where

---

[8]    Indeed, plaintiff knew before the deposition that it would be difficult for Paradox to provide the information sought.  At the beginning of their extensive email correspondence, Ken Lizzi objected to plaintiff's demands saying he was "not sure what [plaintiff] hope[s] to accomplish," and that he was "reluctant to pull people off the job for a fishing expedition." (Ex. 11).    Five days later, he reiterated that he was "not satisfied with the necessity of [plaintiff's] questions," explaining: "I can't justify pulling people off the job for what is sounding more and more like simply a fishing expedition. We've already dredged the lake; there are no more fish." (Ex. 12).

14.

the party does so "without substantial justification" and the failure is not "harmless." Fed. R. Civ. Pro. 37(c)(1). "Substantial justification" for Rule 37(c)(1) requires "justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request . . . The test is satisfied if there exists a genuine dispute concerning compliance." *Kinney v. Trs. of Princeton Univ.*, No. 04-5252 (MLC), 2007 U.S. Dist. LEXIS 14452, at *13 (D.N.J. Feb. 28, 2007) (citations omitted); *United States v. Dentsply Int'l, Inc.*, No. 99-5, 2000 WL 654378, at *7 (D. Del. May 10, 2000)).

Rule 37(c)(1) also provides for other sanctions available under Rule 37(b)(2)(A), (B), and (C), but "the exclusion of critical evidence is *an extreme sanction*, not normally to be imposed absent a showing of willful deception or flagrant disregard." *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977); *see also Ali v. Sims*, 788 F.2d 954, 958 (3d Cir. 1986) (explaining there is a strong presumption against sanctions that decide issues in the case). Thus, in the Third Circuit, a court may not impose exclusionary sanctions unless a party: (1) revealed previously undisclosed evidence when trial was either imminent or in progress; or (2) acted in bad faith, which is more than a mere lack of diligence. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994). When making those determinations, the Court should consider: (1) prejudice or surprise to plaintiff; (2) the ability of plaintiff to cure the prejudice; (3) the likelihood of disruption; and (4) Paradox's bad faith or unwillingness to comply. *See, e.g., Newman v. GHS Osteopathic, Inc.*, 60 F.3d 153, 156 (3d Cir. 1995); *Pennypack*, 559 F.2d at 905 (articulating identical factors for excluding evidence under

15.

Rule 37(b)(2)).    None of those considerations are present here, nor are they even addressed in plaintiff's motion.

### V.    THERE IS NO BASIS TO LIMIT THE TESTIMONY OF PLAINTIFF'S WITNESSES AT TRIAL.

Plaintiff's request in "Point V" that the Court issue a blanket order precluding Paradox witnesses from "testifying *about anything* that its witnesses claimed they could not remember at the depositions" should be denied.    While Paradox does not intend to have its witnesses come to trial to testify inconsistently with their depositions, there is simply no basis for the broad relief requested by plaintiff.    Indeed, plaintiff does not cite a single case to support its request.

In seeking preclusion of testimony "about anything" that could not be recalled, plaintiff submits just six depositions questions without context.  (D.I. 86 at 20-21).    At least some of these questions relate to contentions and information as to the "implications" of this lawsuit.    The subject matter and phrasing of the other questions that plaintiff asks the Court to include in an order is unknown.

Moreover, an order such as that requested by plaintiff would be unworkable.  Questions can be asked in different ways and the answer to a question often depends on the precise words of the question being asked.    An order precluding testimony "about anything" would likely be subject to repeated disputes and requests for clarification.  Perhaps for that reason, changes in a witness' testimony from deposition to trial are not the subject of a preclusion motion, but are invariably explored in cross examination and go to the weight and credibility of the witness' testimony

16.

## CONCLUSION

For the foregoing reasons, Paradox respectfully submits that the plaintiff's motion in limine seeking sanctions should be denied in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Richard J. Bauer*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
Richard J. Bauer (#4828)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200

*Attorneys for Defendant*
*Paradox Entertainment, Inc.*

OF COUNSEL:

Frederick U. Fierst
Fierst, Pucci & Kane LLP
64 Gothic Street
Northampton, MA  01060
(413) 584-8067

June 1, 2007

844829

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2007 I electronically filed the foregoing

with the Clerk of the Court using CM/ECF, which will send notification of such filing to:.

Richard K. Herrmann, Esquire
Morris James LLP

I further certify that I caused to be served copies of the foregoing

document on June 1, 2007 upon the following in the manner indicated:

Richard K. Herrmann, Esquire                    *VIA ELECTRONIC MAIL*
Morris James LLP                                     *and HAND DELIVERY*
500 Delaware Avenue
15th Floor
Wilmington, DE 19801

Mark A. Berman, Esquire                          *VIA ELECTRONIC MAIL*
Thomas J. Curran, Esquire                         *and FIRST CLASS MAIL*
Ira B. Matetsky, Esquire
Ganfer & Shore, LLP
360 Lexington Avenue
New York, NY 10017

/s/ *Richard J. Bauer*
_____
Richard J. Bauer (#4828)

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2007 I electronically filed the foregoing with the

Clerk of the Court using CM/ECF, which will send notification of such filing to:.

Richard K. Herrmann, Esquire
Morris James LLP

I further certify that I caused to be served copies of the foregoing document on

June 7, 2007 upon the following in the manner indicated:

Richard K. Herrmann, Esquire                         *VIA ELECTRONIC MAIL*
Morris James LLP                                          *and HAND DELIVERY*
500 Delaware Avenue
15th Floor
Wilmington, DE  19801

Mark A. Berman, Esquire                              *VIA ELECTRONIC MAIL*
Thomas J. Curran, Esquire                            *and FIRST CLASS MAIL*
Ira B. Matetsky, Esquire
Ganfer & Shore, LLP
360 Lexington Avenue
New York, NY  10017

*/s/ Richard J. Bauer*
_____
Richard J. Bauer (#4828)

EXHIBIT 1

CONFIDENTIAL EXHIBIT

# EXHIBIT 2

CONFIDENTIAL EXHIBIT

EXHIBIT 3

CONFIDENTIAL EXHIBIT

EXHIBIT 4

CONFIDENTIAL EXHIBIT

# EXHIBIT 5

Message

**REDACTED**

**From:** Lieberman, Arthur [mailto:LiebermanA@dsmo.com]
**Sent:** den 12 juli 2005 09:40
**To:** peter.sederowsky@paradox-entertainment.com
**Subject:** RE: § 3.1

**REDACTED**

On the other hand Ive spoken to you about Red
Sonya you should have hand in it, the competition aspects of it cwould then
disappear.   By the by I spend even less of my time on it, but Luke does appear to be
doing a good job.    Any way lets talk by phone or person.   Dude

# EXHIBIT 6

CONFIDENTIAL EXHIBIT

# EXHIBIT 7

CONFIDENTIAL EXHIBIT

# EXHIBIT 8

## B|W|R Public Relations
### An Ogilvy PR Worldwide Company

9100 WILSHIRE BLVD, SIXTH FLOOR, WEST TOWER, BEVERLY HILLS, CA 90212
☎ 310-550-7776 (phone)   🖷 310-550-1701 (facsimile)

<u>FOR IMMEDIATE RELEASE</u>

Contact: Lynda Dorf / Alfred Hopton
(310) 248-6105 / (310) 248-6160
ldorf@bwr-la.com / ahopton@bwr-la.com

## PARADOX ENTERTAINMENT ACQUIRES RIGHTS TO
## ROBERT E. HOWARD'S LIBRARY



*Beverly Hills, CA (February 6, 2006)* – Paradox Entertainment announced today that the company has acquired all rights to the library of author Robert E. Howard, the creator of *Conan* and over 800 other literary pieces. Paradox Entertainment has owned Howard's *Conan* since 2002 and the new addition of the entire library gathers all of Howard's writings under one company. The property was sold to Paradox Entertainment by the Texas-based Alla Ray Morris Generation Skipping Exemption Trust. The transaction is financed through Paradox Entertainment. Paradox Entertainment is represented by The Gersh Agency.

"We have been negotiating this transaction for a year and we are confident of its tremendous value. Through the acquisition we are controlling more rights which we are going to capitalize on, as we have done with *Conan*. I don't think it's possible to overestimate the magnitude of this purchase," said Peter Sederowsky, Chairman of the Board at Paradox Entertainment AB.

As the rights owner, Paradox Entertainment will license properties to other companies, leaving commercialization to them. The main *Conan* licensees are expected to spend more than $200,000,000 dollars in development and advertising during the next few years.

"Robert E. Howard is undoubtedly one of the greatest fantasy authors of the 20th century, with an enormous list of works. It is mind-boggling that only four movies have been made based on his writings. Through this purchase we are securing an extensive production slate through long-term partnership in all areas of entertainment and media. We are already considering many projects and are excited for the future," said Fredrik Malmberg, Head of Licensing & Creative Affairs at Paradox Entertainment Inc. in Los Angeles.

-more-

Page 2

Robert E. Howard was one of the greatest authors of his time and is considered the creator of the genre "Sword & Sorcery", perhaps most known through the character *Conan*. Despite his short literary career – Howard died at the mere age of 30, after only 12 years as a productive author – he wrote over 800 stories and poems. Howard's breakthrough came when being published in the pulp magazine Weird Tales during the 1930s. His stories take us to such different surroundings as ancient Atlantis, the North African desert during WW1, hidden opium dens in dark alleys of the Big City, and northern Britain during the invasion of the Roman Legions.

Over the years, many authors have been inspired by Howard's stories, and have praised his literary legacy, among them H. P. Lovecraft, Michael Moorcock, and Stephen King, who said about Howard: "In his best work, Howard's writing seems so highly charged with energy that it nearly gives off sparks. Stories such as 'People of the Black Circle' glow with the fierce and eldritch light of his frenzied intensity."

### Paradox Entertainment AB

Paradox Entertainment AB owns, develops and licenses mainly character-based properties. The company owns all stories and characters created by pulp author Robert E. Howard, among others Conan, Kull, Bran Mak Morn, Solomon Kane and Red Sonya. Paradox also owns the self-created property Mutant Chronicles. In all, the property portfolio consists of around 1000 stories and characters. Industries exploiting the company property portfolio include film, TV, book, comics, videogame, Internet/mobile/wireless, toys, apparel, and more. The business is mainly conducted through the subsidiary Paradox Entertainment Inc., based in Los Angeles, USA. Paradox Entertainment AB is traded on the Stockholm NGM Equity list (PDXB, SE0000598054).

### ###

EXHIBIT 9

Yahoo!  My Yahoo!  Mail

**YAHOO!** FINANCE **Sign In** New User? Sign Up

Search the Web

Finance Home - Help

Search

Business Wire

**Welcome [Sign In]**

To track stocks & more, Register

## Financial News

Enter symbol(s)    Basic    [ ] Get    Symbol Lookup

Press Release

Source: Paradox Entertainment

# Paradox Entertainment to Develop Robert E. Howard Western

Friday April 21, 7:53 pm ET

LOS ANGELES--(BUSINESS WIRE)--April 21, 2006--Not long after acquiring the entire Robert E. Howard library, Paradox Entertainment announced it has commenced development of a motion picture based on one of Howard's many western stories, titled "Vultures of Wahpeton."

The story is an action thriller that focuses on the character Steve Corcoran, an amoral Texas gunslinger who finds himself far from home in a mining boomtown. Appointed Sheriff, his job is to rid the town of its crushing lawlessness. But Corcoran soon finds himself drawn into a conspiracy to rob the town, led by a mysterious gang known as The Vultures.

The movie will be produced by Paradox's Peter Sederowsky and Fredrik Malmberg along with producer Ken Aguado via his company, Standard Film Group. Leif Rahmqvist acts as executive producer. Paradox has hired David Heller to adapt the novella into a screenplay.

Says Aguado, "This is really one of the best stories I've read since 'Unforgiven.' It has all the elements of the great Hollywood westerns: a strong, enigmatic lead fighting evil while battling his inner demons."

Ken Aguado is the producer of movies such as "Sexual Life" (Anne Heche), "The Salton Sea" (Val Kilmer, Vincent D'Onofrio) and "Ticker" (Dennis Hopper). David Heller was represented by Caren Bohrman of The Bohrman Agency.

It was on February 1, 2006, that Paradox Entertainment announced the acquisition of all rights to the stories and characters of pulp author Robert E. Howard. One of the greatest authors of his time, Howard is considered the creator of the genre "Sword & Sorcery," perhaps most known through the character Conan. His stories take us to such different surroundings as ancient Atlantis, the North African desert during WW1, hidden opium dens in dark alleys of the Big City, the Wild West and northern Britain during the invasion of the Roman Legions.

Paradox Entertainment also owns the self-created property Mutant Chronicles, presently in pre-production for a live-action feature, directed by Simon Hunter.

Paradox Entertainment AB

Paradox Entertainment AB owns, develops and licenses mainly character-based properties. The company owns all stories and characters created by pulp author Robert E. Howard, among others Conan®, Kull®, Bran Mak Morn® and Red Sonya®. Paradox also owns the self-created property Mutant Chronicles®. In all, the property portfolio consists of around 1,000 stories and characters. Industries exploiting the company property portfolio include film, TV, book, comics, videogame, Internet/mobile/wireless, toys, apparel and more. The business is mainly conducted through the subsidiary Paradox Entertainment Inc., based in Los Angeles, USA. Paradox Entertainment AB is traded on the Swedish NGM Equity list (PDXE, SE0000598054).

*Contact:*

Paradox Entertainment

# EXHIBIT 10

## Arthur M. Lieberman

**From:** Peter Sederowsky, Chairman [peter.sederowsky@paradox-entertainment.com]
**Sent:** Wednesday, February 08, 2006 5:43 PM
**To:** Arthur M. Lieberman
**Subject:** RE: Thulsa Doom license

Dear Arthur,

That was a very confusing answer. I will need help to decipher this.

We will revert to you shortly.

Kind regards

Peter



**Peter Sederowsky**
President & CEO

Paradox Entertainment Inc.
8484 Wilshire Boulevard, Suite 870
Beverly Hills, CA 90211
*phone:* (323) 655-1700, *cell:* (310) 409-6948, *fax:* (323) 655-1720



Home of Conan the Barbarian and Mutant Chronicles: www.paradox-entertainment.com / www.conan.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

**From:** Arthur M. Lieberman [mailto:ALieberman@ganshore.com]
**Sent:** Wednesday, February 08, 2006 12:37 PM
**To:** peter.sederowsky@paradox-entertainment.com
**Cc:** Luke Lieberman (E-mail)
**Subject:** RE: Thulsa Doom license

with respect to para 2 this will confirm a screen play was rendered prior to Sept 2005; red sonja llc and thulsa doom corp(sublicensee) have a cross over agreement for comic books;4a) statement mailed;with respect to your last inquiry no approval requested, to my knowledge no use yet made. If you have a preference pls inform me if reasonable I will follow it regardless of contract..

-----Original Message-----
**From:** Peter Sederowsky, Chairman [mailto:peter.sederowsky@paradox-entertainment.com]
**Sent:** Tuesday, February 07, 2006 5:55 PM
**To:** Arthur M. Lieberman
**Subject:** Thulsa Doom license

Dear Art,

RS  05482

Page 2 of 2

We have an agreement dated 12th March 2001 between you as licensee and Kull Productions Inc as licensor in regards of captioned character.

According to § 2 a screenplay shall be rendered before September 2005. Otherwise the agreement will not be in effect. What is your view on that?

Under §3 there is to be a royalty payment of 14%. We noted that Red Sonja Corporation obviously has entered into an agreement with you about the use of Thulsa Doom. Could you come back to me about this, as well as the §4 (a) statement for 2005 that we are to receive?

There seem to be some question as to approval of the name Robert E. Howard in § 13. Have you requested such approval?

Kindest regards

Peter




**Peter Sederowsky**
President & CEO

Paradox Entertainment Inc.
8484 Wilshire Boulevard, Suite 870
Beverly Hills, CA 90211
*phone:* (323) 655-1700, *cell:* (310) 409-6948, *fax:* (323) 655-1720

Home of Conan the Barbarian and Mutant Chronicles: www.paradox-entertainment.com / www.conan.com

The information contained in this e-mail message is intended only for the personal and confidential use of the recipient (s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or an agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail and delete the original message.

10/12/2006

RS 05483

# EXHIBIT 11

## Mark Berman

**From:**     Mark Berman
**Sent:**     Friday, February 16, 2007 1:36 PM
**To:**       'Ken Lizzi'
**Cc:**       Richard K Herrmann Esq (rherrmann@morrisjames.com)
**Subject:** RE: Red Sonja

Ken: Where do we stand?  Mark

**From:** Mark Berman
**Sent:** Thursday, February 15, 2007 1:42 PM
**To:** Ken Lizzi
**Cc:** Richard K Herrmann Esq (rherrmann@morrisjames.com)
**Subject:** RE: Red Sonja

Ken:  Will we need to serve a deposition subpoena on  Dark Horse?  Please let me know.  I would hope not.  Tim is Tim Pecsenye and he is Paradox's counsel.  His number is (215) 569-5619.  Mark

Mark,

Who is Tim?

Ken

On Feb 14, 2007, at 3:12 PM, Mark Berman wrote:

> Ken:  What about authentication for trial?  Please consult with Tim about that, and let me know both of your positions. Thank you   Mark
>
> **From:** Ken Lizzi [mailto:kenl@darkhorse.com]
> **Sent:** Wednesday, February 14, 2007 6:05 PM
> **To:** Mark Berman
> **Subject:** Re: Red Sonja
>
> Mark,
>
> If my statement that we produced all relevant documents is insufficient, I fail to see what further questioning - of me or any other employee - over the telephone would accomplish.
>
> Ken
>
> On Feb 14, 2007, at 1:29 PM, Mark Berman wrote:
>
>> Ken: Where do we stand? Mark

03/21/2007

**From:** Mark Berman
**Sent:** Tuesday, February 13, 2007 9:28 PM
**To:** Ken Lizzi
**Subject:** RE: Red Sonja

Ken: This is not meant to be adversarial and we are not questioning the integrity of your production and hoped we could agree to do the deposition by telephone as previously indicated. Please advise. Thank you. Mark

**From:** Ken Lizzi [mailto:kenl@darkhorse.com]
**Sent:** Tue 2/13/2007 7:30 PM
**To:** Mark Berman
**Subject:** Re: Red Sonja

Mark,

If you are questioning our production that sounds a trifle adversarial. If you truly intend to question Dark Horse's good faith and thoroughness, it might be best if you acquired another subpoena and came to Portland.

Best wishes,

Ken

On Feb 13, 2007, at 6:27 AM, Mark Berman wrote:

> Ken: There is no specific document that we believe your company did
> not produce. We need to ensure that your people looked for all relevant
> documents, and that all documents produced are properly authenticated
> for trial. Mark

**From:** Ken Lizzi [mailto:kenl@darkhorse.com]
**Sent:** Monday, February 12, 2007 7:54 PM
**To:** Mark Berman
**Subject:** Re: Red Sonja

Mark,

What sort of information, exactly, are you looking for here? Is there some specific document you think we did not produce? Re-reading this list, I'm not sure what you hope to accomplish. I'm reluctant to pull people off the job for a fishing expedition. Can you give me an idea of what you want?

Ken

On Feb 9, 2007, at 2:19 PM, Mark Berman wrote:

> Ken: This sounds fair. Please give me some available
> dates that work for your team on or before 2/28. Mark

**From:** Ken Lizzi [mailto:kenl@darkhorse.com]
**Sent:** Wednesday, February 07, 2007 1:30 PM
**To:** Mark Berman
**Subject:** Re: Red Sonja

Mark,

Would perhaps myself, an editor, and an IT employee
be sufficient? It seems that calling in everyone who
wrote or received one of these documents would not
only unreasonably disrupt our business and cost us a
lot of man hours, but would simply lead to redundant
answers. I'm in discussions with those I think the best
candidates for the deposition.

Cheers,

Ken

On Feb 5, 2007, at 11:41 AM, Mark Berman wrote:

> Ken: As we
> discussed, please
> see below the types
> of questions for
> which I would be
> asking questions at
> a telephonic
> deposition of Dark
> Horse concerning
> the documents Dark
> Horse produced
> pursuant to the
> subpoena. Please
> give me a call to
> discuss. Thank you
> for your help in this
> matter. Mark
>
>   ▪ Is this the type
>     of document
>     that is kept in
>     the ordinary
>     course of your
>     business?
>   ▪ Was this
>     document kept
>     in the ordinary
>     course of your
>     business?
>   ▪ Who collected

the documents in response to the subpoena?
- Where did the person go to look for responsive documents?
- Who did they speak with?
- Document retention policy
- Any documents you were unable to locate?  Go over by category
- Do you recognize this document?
- What do you recognize it to be?
- Do you recognize the signature and names of the people?
- Whose signature is it?
- What do you recognize it to be?
- How do you know that it is _____?

Mark A. Berman, Esq.

Ganfer & Shore, LLP

360 Lexington Avenue, 14th Floor

New York, New York 10017

Tel:   (212) 922-9250 ext. 266

Fax:   (212) 922-9335

Email:  mberman@ganshore.com

The information contained in this e-mail is confidential and may be legally privileged. If you are not the intended recipient, you must not read, use  or disseminate the information. Although this e-mail and any attachments are believed to be free of any virus or other defect that might affect any computer system into which it is received and

# EXHIBIT 12

## Mark Berman

**From:** Ken Lizzi [kenl@darkhorse.com]
**Sent:** Tuesday, February 20, 2007 2:29 PM
**To:** Mark Berman
**Subject:** Re: Red Sonja

Mark,

This sounds like primarily a restatement of the list of questions you sent originally. It also seems to indicate a groundless suspicion about the production of documents. The vast amount of paper provided should speak for itself.

Ken

On Feb 19, 2007, at 9:30 AM, Mark Berman wrote:

> Ken: Copies of all the documents sent to us by you would be sent back to you with bates numbers. We would, for example, go through the process of how the documents were accumulated and where they had been stored. Why they were kept -- as part of Dark Force's business. Identifying the positions of the sender and recipients. We would not be asking people what documents mean. Any document retention policy Dark Forces has? Very uncontroversial type of questioning. Mark

> **From:** Ken Lizzi [mailto:kenl@darkhorse.com]
> **Sent:** Monday, February 19, 2007 12:18 PM
> **To:** Mark Berman
> **Subject:** Re: Red Sonja

> Mark,

> What might that entail?

> Ken

> On Feb 17, 2007, at 9:03 AM, Mark Berman wrote:

>> Ken: Do you have any objection to a telephonic deposition strictly limited to authentication of the materials your company produced. Mark

>> Mark,

>> I'm not satisfied with necessity of these questions. What you hope to gain seems very vague. Without a compelling reason (e.g., a court's request) I can't justify pulling people off the job for what is sounding more and more like

simply a fishing expedition. We've already dredged the lake; there are no more fish. If you can identify something specific you think we haven't produced, I'll happily look into it.

Have a good weekend.

Ken

On Feb 16, 2007, at 10:36 AM, Mark Berman wrote:

Ken: Where do we stand? Mark

**From:** Mark Berman
**Sent:** Thursday, February 15, 2007 1:42 PM
**To:** Ken Lizzi
**Cc:** Richard K Herrmann Esq (rherrmann@morrisjames.com)
**Subject:** RE: Red Sonja

Ken: Will we need to serve a deposition subpoena on Dark Horse? Please let me know. I would hope not. Tim is Tim Pecsenye and he is Paradox's counsel. His number is (215) 569-5619. Mark

Mark,

Who is Tim?

Ken

On Feb 14, 2007, at 3:12 PM, Mark Berman wrote:

Ken: What about authentication for trial? Please consult with Tim about that, and let me know both of your positions. Thank you Mark

**From:** Ken Lizzi [mailto:kenl@darkhorse.com]
**Sent:** Wednesday, February 14, 2007 6:05 PM
**To:** Mark Berman
**Subject:** Re: Red Sonja

Mark,

If my statement that we produced all relevant documents is insufficient, I fail to see what further questioning - of me or any other employee - over the telephone would accomplish.

Ken

On Feb 14, 2007, at 1:29 PM, Mark Berman wrote:

> Ken: Where do we stand?  Mark

---

**From:** Mark Berman
**Sent:** Tuesday, February 13, 2007 9:28 PM
**To:** Ken Lizzi
**Subject:** RE: Red Sonja

Ken: This is not meant to be adversarial and we are not questioning the integrity of your production and hoped we could agree to do the deposition by telephone as previously indicated. Please advise. Thank you. Mark

---

**From:** Ken Lizzi
[mailto:kenl@darkhorse.com]
**Sent:** Tue 2/13/2007 7:30 PM
**To:** Mark Berman
**Subject:** Re: Red Sonja

Mark,

If you are questioning our production that sounds a trifle adversarial. If you truly intend to question Dark Horse's good faith and thoroughness, it might be best if you acquired another subpoena and came to Portland.

Best wishes,

Ken

On Feb 13, 2007, at 6:27 AM, Mark Berman wrote:

> Ken: There is no specific document that we believe your company did not produce. We need to ensure that your people looked for all relevant documents, and that all documents produced are properly authenticated for trial. Mark

---

**From:** Ken Lizzi
[mailto:kenl@darkhorse.com]
**Sent:** Monday, February 12,

received one of
these documents
would not only
unreasonably
disrupt our
business and
cost us a lot of
man hours, but
would simply
lead to
redundant
answers. I'm in
discussions with
those I think the
best candidates
for the
deposition.

Cheers,

Ken

On Feb 5, 2007,
at 11:41 AM,
Mark Berman
wrote:

Ken:

As we discussed, pleas

# EXHIBIT 13

Page 1

```
 1              IN THE UNITED STATES DISTRICT COURT

 2             IN AND FOR THE DISTRICT OF DELAWARE

 3                        - - -

 4    SEAGATE TECHNOLOGY LLC,        :      CIVIL ACTION
                                     :
 5              Plaintiff            :
                                     :
 6          vs.                      :
                                     :
 7    CORNICE, INC.,                 :
                                     :
 8              Defendant            :      NO. 04-418 (SLR)

 9                        - - -

10                              Wilmington, Delaware
                                Tuesday, June 28, 2005
11                              4:43 o'clock, p.m.

12                        - - -

13    BEFORE:  HONORABLE SUE L. ROBINSON, Chief Judge

14                        - - -

15    APPEARANCES:

16              FISH & RICHARDSON P.C.
                BY:  TIMOTHY DEVLIN, ESQ
17

18                   -and-

19
                FISH & RICHARDSON P.C.
20              BY:  BRIAN R. NESTER, ESQ.
                     (Washington, D.C.)
21
                     Counsel for Plaintiff
22

23                              Valerie J. Gunning
                                Official Court Reporter
24

25
```

Page 38

1    the patents are invalid.

2         THE COURT: I don't do contention depositions.

3    You all know that. You all should know that. No

4    contention depositions. Those are in writing. There's

5    no one person that should have to answer that.

6         All right. Let me -- just stay here for a

7    minute. Let me check to see what my situation is.

8         I was supposed to ask you all something. We

9    are now in the wonderful word of electronic filing. We

10   are not going to babysit lawyers in terms of what they

11   file if it's confidential or not. You either need to

12   take your responsibility to file it under seal and then

13   file a redacted version. On the other hand, I have a

14   hard copy of Cornice's motion for leave to file an

15   amended answer and counterclaim, stamped confidential,

16   my hard copy, but I don't think it was filed under seal.

17        So I mean it's out in the world now. If you

18   want to change it, you need to do that.

19        This is just a note I got from my Clerk. I

20   actually don't have any clue as to what you did. But

21   we are not babysitting. Once it's out, it's out. If

22   you want me to do something about it, you have to file

23   a motion and have me do it. All right? Hold on. Let's

24   get us organized.

25        (Short recess taken.)

EXHIBIT 14

1

 1                  IN   THE   UNITED   STATES   DISTRICT   COURT

 2              IN   AND   FOR   THE   DISTRICT   OF   DELAWARE

 3                                    -   -   -

ARTHROCARE   CORPORATION

 4                                      :        CIVIL   ACTION
            Plaintiff,                  :

 5                                      :

 6          v.                          :

SMITH   &   NEPHEW,   INC.,             :        NO.   01-504   (SLR)

 7                                      :

 8          Defendant.                  -   -   -

 9                      Wilmington,   Delaware
                 Tuesday,   October   15,   2002   at   11:36   a.m.
10                      TELEPHONE   CONFERENCE

11                                    -   -   -

12   BEFORE:        HONORABLE   SUE   L.   ROBINSON,   Chief   Judge

13                                    -   -   -

APPEARANCES:

14

15          MORRIS   NICHOLS   ARHST   &   TUNNELL
            BY:   JACK   B.   BLTJMENFELD,   ESQ.,   and
16                KAREN   JACOBS   LOTJDEN,   ESQ.

17          -and-

18          WEIL   GOTSHAL   &   MANGES
            BY:   PERRY   CLARK,   ESQ.
19                (Redwood   Shores,   California)

20          -and-

21          WEIL   GOTSHAL   &   MANGES
            BY:   JARED   BOBROW,   ESQ.
22                (Silicon   Valley,   California)

23                      Counsel   for   ArthroCare   Corporation

24

                        Brian   P.   Gaffigan
25                      Official   Court   Reporter

13

1    don't have any particular conflicts that you need to tell me

2    about that week.

3            All right. I take it you are still there. We'll

4    schedule it for Wednesday, the 30th. And again, because I was

5    supposed to be in trial, I have time in the morning available

6    if you all are available.

7            MR. BLUMENFELD: Your Honor, from our side,

8    plaintiff's side, I think morning would be fine.

9            MR. MARSDEN: I think that is fine, your Honor.

10    This is William Marsden.

11            THE COURT: All right. Let's make it at 9:30 then

12    when my trial day usually starts. Hopefully by that time, you

13    will have conferred, and if in fact the 23 ring binders have

14    been supplied, that will be confirmed, so that this list of 76

15    documents or categories of documents can be whittled down to

16    at least what has been produced or not, and then they need to

17    be further whittled down to those that should not go, that

18    there is some resistance to producing vs. the suspicion they

19    exist but no one has produced them yet.

20            With respect to contention depositions, I'm not

21    sure I have ever said you can't take them, but in my mind, it

22    is very unfair and not reasonable. Therefore, I would not

23    put any credence in contention depositions to have one person

24    be designated as the corporate spokesperson for legal issues

25    like infringement and even incorporating all the facts. That's

14

1    what interrogatories are for. To put that on one person I

2    think does not make sense. If you produce things out of the

3    contention deposition, I would not give it any weight so I

4    would say don't bother taking them. I think they're

5    ridiculous myself.

6              So do we need to talk about this other witness,

7    the Examiner? And does the plaintiff have a position on

8    that? Is that something that needs to be addressed today as

9    opposed to waiting until the 28th or 30th?

10             MR. BLUMENFELD: I don't know that it can't wait

11   until the 30th. Jared, I don't know whether you want to

12   address that today or not.

13             MR. BOBROW: Your Honor, Jared Bobrow. As far

14   as the Examiner deposition goes, we do think that it is

15   improper to take a deposition of an Examiner on a pending

16   reexamination. It allows someone not a party to the reexam

17   to get involved in it and do things which are not otherwise

18   permitted in the normal course of patent prosecution and

19   patent examination. So we have advised the Solicitor of that

20   objection in response to a request that we let them know we

21   have a position on that and we have done so. I think the

22   Solicitor's Office was simply waiting to see whether or not

23   any extension of the discovery would be allowed so that they

24   would know whether or not the issue before them was ripe in

25   terms of deciding whether they would or would not make a